T.C. Summary Opinion 2009-63


UNITED STATES TAX COURT



REID AND IRENE BURNHAM CHAMBERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 28946-07S.              Filed May 4, 2009.



Reid and Irene Burnham Chambers, pro sese.

<u>Roger W. Bracken</u>, for respondent.



NIMS, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a $1,083 deficiency in petitioners' Federal income tax for the 2005 tax year. The issue for decision is whether Ms. Chambers received a deemed distribution under her life insurance contract which resulted in gross income to petitioners.

## Background

Some of the facts have been stipulated and are so found. Petitioners timely filed a 2005 Federal income tax return. Respondent issued a statutory notice of deficiency determining that petitioners failed to report as gross income the deemed distribution of the cash value of Ms. Chambers's life insurance policy. Petitioners resided in Virginia when they filed their petition.

In 1981 Ms. Chambers obtained whole life insurance from Nationwide Life Insurance Co. (Nationwide) through its agent Michael Travis. She had previously procured home and car insurance through him, and she relied on his recommendation in choosing this particular life insurance policy. In her application she elected the Automatic Premium Loan (APL) provision. Nationwide issued the policy on April 27, 1981. The premiums were automatically paid through a monthly debit on Ms. Chambers's checking account.

In early 1986 Ms. Chambers moved to Philadelphia, Pennsylvania, and moved her checking account to a different bank.

When her former bank declined the next automatic debit payment, Nationwide wrote to her regarding the unpaid premium. Ms. Chambers informed Nationwide of the change in address and the switch to a new bank, requested a change to a quarterly payment schedule, and included a check for the missed premium payment.

Ms. Chambers made the next quarterly payment on March 28, 1986. However, she then received a whole benefits package from her employer and no longer needed life insurance from Nationwide. She therefore orally instructed Mr. Travis to cancel the policy. He indicated the policy was being canceled, telling her he was sorry to lose her as a customer. He did not advise her that she needed to take any further action to cancel the policy.

Believing her policy had been canceled, Ms. Chambers ceased making payments. In fact, Nationwide had not canceled her policy, and as a result, the nonpayment of premiums triggered the APL provision of the policy. Starting from September 9, 1986, Nationwide automatically granted her loans (policy loans) to cover the unpaid premiums.

Nationwide subsequently sent Ms. Chambers correspondence that should have alerted her to the fact that the policy had not been canceled. A letter dated April 8, 1991, requested verification of her current address and included the most recent bill. Another billing statement was sent to her on March 30, 2001. A letter dated January 10, 2002, acknowledged her request

to terminate the policy, explained the consequences of surrendering the policy, and listed her available options. The letter also included a surrender application which she never completed or returned. A notice dated March 30, 2003, advised that the annual premium had been reduced to $260.20. A confirmation of her change of address was sent to her on May 5, 2003. Ms. Chambers claims that she did not receive some of this correspondence because she moved several times during this period.

Ms. Chambers disregarded most of the correspondence she did receive, believing it had been sent in error. However, on one occasion she did call Nationwide to question why she was continuing to receive the notices. When she insisted that she had already canceled the policy, the Nationwide representative indicated that the notices must have been sent by mistake.

Nationwide continued granting Ms. Chambers policy loans under the APL provision until June 26, 2003. When the next premium came due the following year, the APL provision ceased to apply because the next policy loan would have caused her total indebtedness to exceed the cash value of the policy. Instead, under the policy's nonforfeiture provisions, her coverage was converted from whole life insurance to extended term insurance for a period based on the policy's net cash value.

On November 7, 2005, Nationwide notified Ms. Chambers that the extended term insurance would expire without value on December 7, 2005. On December 11, 2005, Nationwide informed her that she had gross income of $8,753.33 as a result of the expiration of her policy. On March 20, 2006, Nationwide sent her a corrected Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., which reported a gross distribution of $8,753.33 and income of $3,005.63. Petitioners did not include these amounts on their 2005 return.

## Discussion

In general, any amount received upon the surrender, redemption, or maturity of a life insurance contract which is not received as an annuity is gross income to the extent that it, when added to amounts previously received under the contract and excluded from gross income, exceeds the aggregate of premiums or other consideration paid. Sec. 72(e)(1)(A), (5)(A), (C), (6); sec. 1.72-11(d)(1), Income Tax Regs.

When Ms. Chambers's policy terminated, Nationwide applied the policy's cash value to the outstanding balance on the policy loans. That constructive distribution is gross income to petitioners to the extent it exceeds the sum of the premiums paid by Ms. Chambers. See Atwood v. Commissioner, T.C. Memo. 1999-61; Dean v. Commissioner, T.C. Memo. 1993-226.

Petitioners argue that Ms. Chambers canceled her insurance contract with Nationwide in 1986 before any policy loan had been granted under the APL provision.  Since no policy loans would have been outstanding, there would have been no deemed distribution to satisfy that nonexistent debt.

Ms. Chambers did not comply with the requirements for termination under the contract.  The contract required her to give written notice and surrender the policy in order to terminate the contract and receive payment of the policy's net cash value.  She never did so, and the contract did not give her the right to unilaterally terminate the contract by giving oral notice to Mr. Travis.

Though parties to a contract can agree to mutually rescind the contract, Mr. Travis's assent to cancellation of the insurance contract is not binding on Nationwide unless Mr. Travis possessed the requisite authority.  See Prillaman v. Century Indem. Co., 49 F. Supp. 197, 202 (W.D. Va. 1943), affd. 138 F.2d 821 (4th Cir. 1943); Zurich Gen. Accident & Liab. Ins. Co. v. Baum, 165 S.E. 518, 519 (Va. 1932).  Mr. Travis lacked actual, implied, or apparent authority to enter into that agreement because the contract expressly stated that "only the President or Secretary of the Company may make or change a contract on its

behalf". The agreement was not ratified because Nationwide continued to send Ms. Chambers correspondence indicating that it considered the policy still effective.

Moreover, at the time Ms. Chambers instructed Mr. Travis to cancel the contract, the policy had a significant cash value. Petitioners do not account for the disposition of that cash value upon the purported termination of the contract.

For these reasons, we hold that petitioners have gross income from the satisfaction of the policy loans granted under Ms. Chambers's life insurance contract.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.